FILED
11 JUN 30 PM 3:33
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ________

Grace Parasmo (not admitted)
gparasmo@kamberlaw.com
KamberLaw, LLC
100 Wall Street 23rd floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile (212) 920-3081

Avi Kreitenberg (SBN 266571)
KamberLaw, LLP
akreitenberg@kamberlaw.com
1180 S. Beverly Drive suite 601
Los Angeles, CA 90035
Telephone: (310) 400-1050
Facsimile (310) 400-1056

Jeremy R. Wilson (not admitted)
Jeremy@wilsontrosclair.com
Wilson Trosclair & Lovins, PLLC
302 North Market Street, Suite 510
Dallas, TX 75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475
Counsel for Plaintiffs

Additional counsel listed on signature page

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CATHERINE ALTAMURA; and LISA PEARLY, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>L'OREAL, USA, INC. and L'OREAL USA PRODUCTS, INC.,<br><br>Defendants. | CASE NO. CV11-05465 GW (CWx)<br>JURY DEMAND<br><br>**COMPLAINT – CLASS ACTION**<br><br>**For Violations of:**<br>**1. UCC §2-314;**<br>**2. UCC §2-315;**<br>**3. Song-Beverly Consumer Warranty Act, §1792 & 1791(1)(a);**<br>**4. Song-Beverly Consumer Warranty Act, §1792 & 1791(1)(b);**<br>**5. Cal. Bus. & Profs. Code §17200**<br>**6. Cal. Civil Code §1750**<br>**7. Cal. Civil Code §17500**<br>**8. N.Y. G.B.L. §349**<br>**9. N.Y. G.B.L. §350** |

On behalf of themselves and all others similarly situated, Plaintiffs, CATHERINE ALTMAMURA and LISA PEARLY, sue Defendants, L'OREAL, USA, INC., and L'OREAL USA PRODUCTS, INC., and in support thereof, state:

## I.   NATURE OF THE CASE

1.    This case arises out of L'Oreal's failure to warn thousands of consumers nationwide that the two main ingredients in its "leave-in" hair styling product—Garnier Fructis Sleek & Shine Anti-Frizz Serum ("Serum")—are flammable upon contact with temperatures reached by most hair styling appliances. Plaintiffs and members of the proposed Classes purchased Serum believing it was defect-free and safe for all ordinary hair styling purposes. However, the product was neither suitable for ordinary use as a "leave-in" hair styling product nor for the particular purpose of using with styling appliances such as straightening and curling irons. By manufacturing, distributing, and marketing Serum without proper warning labels, L'Oreal breached its implied warranties to consumers, violating state consumer protection and unfair competition laws. Plaintiffs bring this class action for equitable, injunctive, declaratory, and monetary relief as set forth below.

## II.   PARTIES

2.    Plaintiff CATHERINE ALTAMURA is a resident of Los Angeles, California. Ms. Altamura purchased Serum at a retail store in California several times during the period of February 4, 2007 through the present (the "Complaint Period").

3.    Plaintiff LISA PEARLY is a resident of New York County, New York. On or about March 2010, Ms. Pearly purchased Serum at a pharmacy in New York.

4. Defendant L'OREAL USA, INC. is incorporated in Delaware and headquartered at 575 5th Avenue, New York. L'Oreal USA, Inc. does business in California and throughout the United States.

5. Defendant L'OREAL USA PRODUCTS, INC. is incorporated in Delaware and headquartered at 575 5th Avenue, New York. L'Oreal USA Products, Inc. does business in California and throughout the United States.

6. In recent years, Defendant L'Oreal USA, Inc. and L'Oreal USA Products, Inc. (collectively, "Defendants" or "L'Oreal") have averaged $2.1 billion in sales in North America for the consumer's cosmetics and beauty products division, including sales of the Garnier line of products.

## III. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action pursuant to Title 28, United States Code, section 1332, as amended by the Class Action Fairness Act of 2005, in that the aggregate claims of Plaintiffs and the proposed Class Members (as defined herein) exceed the sum or value of $5,000,000, exclusive of interest and costs.

8. There is minimal diversity of citizenship between the proposed Class Members and Defendants in that (a) L'Oreal USA, Inc. and L'Oreal USA Products, Inc. each do business and are headquartered in New York; and (b) Plaintiffs are citizens and residents of the states of New York and California asserting claims on behalf of proposed classes whose members reside in those states.

9. Venue is proper in this District pursuant to Title 28, United States Code, section 1391, in that Defendants conduct business with consumers in this District and a substantial portion of the events and conduct giving rise to the violations of law set forth herein took place in this District.

10. This Court has personal jurisdiction over Defendants because: (a) a substantial portion of the wrongdoing alleged in this Complaint took place in this state; and (c) Defendants are authorized to do business in and have sufficient

minimum contacts with this state and/or have otherwise intentionally availed themselves of the markets in this state through the promotion, marketing, and sale of their products and/or services in this state to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Specifically, Defendant has sold its goods within the Central District of California.

11. Venue is appropriate in this District because Defendant has sold its goods within the Central District of California.

**IV. STATEMENT OF FACTS**

12. Garnier Fructis Anti-Frizz Sleek & Shine Serum is a consumer hair styling product designed to counteract the effects of "frizzy, dry and unmanageable" hair.

13. L'Oreal manufactures and distributes Serum and promotes it specifically for the consumer market.

14. During the Complaint Period, as defined herein, Serum was widely distributed and sold in drug stores, mass retail outlets, and supermarkets and through online retailers to consumers throughout the States of California and New York and the United States.

15. Hair products such as Serum are typically used by consumers immediately before styling their hair using a blow-dryer, curling iron, straightening iron, or straightening comb ("styling appliance").

16. In consumer-targeted statements made by L'Oreal during the Complaint Period, L'Oreal promoted Serum as a "leave-in" hair-styling product that the consumer could liberally apply to hair before using a heated hair-styling appliance. For example:

17. On the Garnier website and on Serum product packaging, L'Oreal instructs the consumer to use "as much as needed for your hair type," "do not rinse," and "[f]or the sleekest look, style using brush and blowdryer." See, Gar-

nier website, "Garnier Fructis SLEEK & SHINE ANTI-FRIZZ SERUM (LEAVE-IN)," Product Information, available at http://www1.garnierusa.com/_en/_us/our_products/product-struct.aspx?tpcode=OUR_PRODUCTS^PRD_HAIRCARE^FRUCTIS^FRUCTIS_DISCOVER^FRUCTIS_SLEEK_SHINE^FRUCTIS_-SLEEK_SHINE2_RTN2&prdcode=P41029 (last visited January 24, 2011).

18. On Serum product packaging, L'Oreal placed a misleadingly limited, and inaccurate, warning that implied its product was safe to use with styling appliances, stating, "AVOID FIRE, FLAME, SMOKING AND HEAT (*EXCEPT FOR STYLING APPLIANCES*) DURING APPLICATION AND UNTIL HAIR IS COMPLETELY DRY" (emphasis added).

19. On other Serum product packaging, L'Oreal provided no warning of any kind.

20. In addition, L'Oreal expressly promised consumers its products were safe for consumer use on its various websites.

21. For example, on its Garnier website, L'Oreal states:

> Garnier uses methodologies recognized by the international scientific community as part of its product and claim development process which evaluates the safety and effectiveness of ingredients, finished products, and marketing claims. . . . The Garnier products benefit from scientific and customer research gathered at 13 research centres and 13 evaluation centres around the world. . . . We also conduct independent clinical studies to assess the effectiveness and safety of our products. . . .

22. In addition, on the L'Oreal website (www.loreal.com), L'Oreal made the following representations:

Safety Evaluation

L'Oréal takes safety very seriously and, well before it was required by law, we had put in place a safety evaluation team to ensure the safety of our products for both professionals and consumers.

Our International Safety Evaluation Division uses a multi-disciplinary scientific approach to evaluate the safety of our products, ensuring that our commitment to product safety is upheld at every stage in the product's life.

This safety assurance procedure includes an assessment based on the latest medical and scientific research, rigorous safety evaluations of ingredients as well as finished products, examination of the effects of cumulative product use and ongoing safety monitoring once a product is on the market.

Product safety studies are designed and monitored and their results interpreted and evaluated by scientists who are specially trained and experienced in safety evaluations.

....

Governmental Regulation

In addition to the rigorous safety testing that L'Oréal conducts for each finished product before making it available for sale, we are also held accountable to governmental requirements for safety in the 130 countries where we market our products.

> Whether governed by the European Cosmetic Directive, the US Food and Drug and Cosmetic Act or any other local laws that regulate the sale of cosmetic products, L'Oréal meets or exceeds the legal obligation for product safety in each country where our products can be purchased.
>
> Ingredients Used in Cosmetics
>
> L'Oréal uses several thousand ingredients in the manufacture of cosmetic and personal care products that we sell....
>
> L'Oréal carefully considers several factors in the choice and selection of an ingredient for a product formulation, including its function, use and concentration, degree of purity and stability, potential for the ingredients to be absorbed into the skin or how a particular ingredient might interact with other ingredients. Trained scientists consider all these factors when selecting an ingredient or its alternative in the development of product formulas. Whether natural or synthetic, all our ingredients are equally safe when approved by our scientists for the use in our products.

*See* Exhibit "A" attached hereto.

23. The statements identified in paragraphs 16 through 22 constitute express representations relied upon by Plaintiffs and the Class.

24. Serum's main ingredients are cyclopentasiloxane and dimethiconol.

25. Both of these ingredients are known to be flammable substances that should be kept away from heat sources and sources of ignition.

26. These ingredients are each reported to have a flashpoint of only 171 degrees Fahrenheit or 77 degrees Celsius, that is, the vapor of either of them can be made to ignite and maintain a burn at this temperature.

27. The normal and ordinary sustained heating range for commonly used styling appliances is approximately 200 to 450 degrees Fahrenheit.

28. Serum is therefore flammable and is unsafe to bring into contact with heated styling appliances because use of the product with a heated styling appliance puts the consumer at an unreasonable risk of injury from burns to the face, head, and neck.

29. Tests conducted on Serum have confirmed Serum poses a flame or fire hazard when used with heated styling appliances.

30. Serum therefore posed an extreme, serious, and unreasonable danger to consumers who used Serum in the manner in which they would be expected to use such a product and/or when using Serum according to L'Oreal's instructions, that is, by applying Serum to their hair and then using heated styling appliances on their hair.

31. Defendants claim that their practices include safety research regarding their products, as noted in paragraphs 21 and 22, above.

32. Defendants knew or should have known that Serum's main ingredients are cyclopentasiloxane and dimethiconol.

33. Defendants knew or should have known that these substances have flashpoints of 171 degrees Fahrenheit and are therefore flammable.

34. Defendants knew or should have known that styling appliances typically generate heat in the range of 200 to 450 degrees Fahrenheit.

35. Defendants knew or should have known that consumers who purchased Serum would apply Serum to their hair and then use heated styling appliances on their hair.

**A.    Defendants' Failure to Warn**

36.    By selling Serum as labeled, L'Oreal represented to Plaintiffs and Class Members that it was safe, of mercantile quality, fit for its intended and reasonable uses, and accompanied by sufficient protections and warnings regarding the potential dangers and hazards that reasonable consumers would expect and assume to be provided for them to decide whether to purchase Serum.

37.    Defendants' marketing and labeling of Serum affirmatively and impliedly presented the product as being suitable for ordinary uses and for particular purposes, including use as a "leave-in" hair styling product to be used in conjunction with commonly used, heated styling appliances. However, the product was not suitable for such use.

38.    Despite L'Oreal's knowledge of the flammability of the product and the likelihood that consumers would apply it before or during use of a heated styling appliance, L'Oreal failed to warn consumers that its product was defective and/or posed a substantial and unreasonable risk of burns to the face, head, and neck.

39.    L'Oreal materially misrepresented the safety of Serum and/or omitted material information from its representations.

40.    Plaintiffs and Class Members relied upon L'Oreal's representations with respect to the safety of the product, as well as the lack of safety warnings, in making their purchasing decisions.

41.    Plaintiffs and Class Members would not have purchased Serum if L'Oreal had disclosed the fact that Serum was flammable and unsuitable for use in conjunction with styling appliances.

42.    Plaintiffs and Class Members paid more for the product than they would have paid if the product had been labeled accurately and had contained adequate warnings.

43.     Because L'Oreal did not properly label Serum, Plaintiffs were misled into purchasing a product that did not meet their expectations and which was extremely dangerous for them to use.  Upon learning about the dangerous nature of and serious hazards posed by using Serum, Plaintiffs ceased using the product and purchased a replacement product.

44.     Given the undisclosed dangers imposed by using Serum, Serum was not useful to Plaintiffs and was not as valuable to them as the price for which they paid for it.

45.     A reasonable consumer would, and Plaintiffs and Class Members did, in fact, expect that if Serum were flammable, the packaging of Serum would contain a warning as to its flammability.

46.     The prevalence of flammability warnings in the market place create consumer expectations that they will be warned of a products' ingredients flammability.  In the absence of such a warning, Plaintiffs and Class Members reasonably concluded that the materials used in Serum were non-flammable and were appropriate for use with heated hair styling appliances.

47.     Plaintiffs and Class Members' expectations were reasonable for an additional reason: the Food, Drug and Cosmetic Act regulations provide that cosmetics that may be hazardous to consumers (for example, cosmetics that are flammable) must bear appropriate label warnings. *See e.g.*, 21 CFR 740.1; *see also*, http://www.fda.gov/Cosmetics/CosmeticLabelingLabelClaims/default.htm. In fact, as discussed above in paragraph 22, L'Oreal's website affirmatively represents that it complies with federal cosmetic labeling laws.

48.     Defendants' competitors manufacture, market, and distribute comparable anti-frizz products (containing cyclopentasiloxane and dimethiconol) that contain adequate warning labels.

49.   In comparison to similar products that display adequate warning labels, Defendants charged a premium for Serum, inaccurately representing that it was a safer product than those of competitors that displayed adequate warnings.

50.   Plaintiffs and Class Members paid a premium for Serum because they reasonably believed that it was a safe product suitable for use in conjunction with styling appliances.

51.   Plaintiffs and Class Members suffered actual damages as a result of Defendants' acts and omissions. Specifically, as a proximate result of Defendants' conduct, Plaintiffs and other Class Members suffered monetary losses, *i.e.*, the purchase price of Serum or, at a minimum, the difference of the inflated price and the price Defendants should have charged for a product that contained sufficient warnings.

**B.    Consumer Consequences**

52.   To date, L'Oreal has not recalled the product nor has it offered to reimburse consumers for purchasing the product.

53.   As a consequence of Defendants' failure to provide adequate warnings about the flammability of Serum, Plaintiffs and Class Members have an extremely dangerous product that is unsuitable for its intended and foreseeable use as a "leave-in" hairstyling product to be used in conjunction with heated styling appliances.

54.   Plaintiffs and Class Members who purchased Serum are entitled to a refund, of the purchase price, or in the alternative, the premium they paid for the product above the amount charged for similar, adequately labeled products.

55.   Plaintiffs and the Classes also seek a court order requiring the Defendants to issue a recall of the product and to re-label the product with adequate warnings.

## V. CLASS ACTION ALLEGATIONS

56. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure, Rules 23(b)(2) and (b)(3), on behalf of themselves and the following classes of purchasers (each a "Class Member" of the "Classes"):

a. *The "Multistate Class"*: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the United States during the period of February 4, 2007 through the present.

b. *The "California Class"*: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of California during the period of February 4, 2007 through the present.

c. *The "New York Class"*: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of New York during the period of February 4, 2008 through the present.

57. Excluded from the Classes are Defendants as well as Defendants' affiliates, employees, officers and directors, and any persons who have sustained physical injury as a result of the defects at issue in this litigation. Also excluded are employees of this Court, including but not limited to Judges, Magistrate Judges, clerks and court staff and personnel of the United States District Courts of the Central District of California, the United States Court of Appeals for the Ninth Circuit and the United States Supreme Court. Plaintiffs reserve the right to amend the definitions of the classes if discovery or further investigation reveals that the classes should be expanded or otherwise modified.

58. Numerosity/Impracticability of Joinder: The members of each of the Classes are so numerous that joinder of all members would be impracticable. Plaintiffs reasonably estimate that each of the proposed Classes consists of thousands of consumers who purchased Serum.

59. Commonality and Predominance: Common questions of law and fact predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from one Class Member to another and which may be determined without reference to the individual circumstances of any Class Member, include, but are not limited, to the following:

a. Whether Defendants omitted and/or concealed material facts from Plaintiffs and the members of the Classes regarding the flammability of Serum when used with styling appliances;

b. Whether the Defendants' marketing of Serum was misleading in a material way;

c. Whether, by the conduct set forth in this Complaint, Defendants have engaged in deceptive, unlawful, unfair ad fraudulent business practices with respect to the sale and marketing of Serum, in violation of various state consumer protections statutes;

d. Whether, by their conduct described herein, Defendants breached implied warranties with Plaintiffs and the Classes;

e. Whether, as a result of Defendants' conduct, Plaintiffs and the Classes are entitled to damages; and

f. Whether, as a result of Defendants' conduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

60. Typicality: Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs and all Class Members were injured by the same wrongful practices in which Defendants engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Classes and are based on the same or similar legal theories.

61. Adequacy: Plaintiffs will fully and adequately protect the interests of the members of the Classes and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation. Neither Plaintiffs nor their counsel have interests contrary to or conflicting with those of the Classes. Defendants have no defenses unique to Plaintiffs.

62. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

63. Plaintiffs do not anticipate any difficulty in the management of this litigation.

64. Defendants have acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

65. Without a class action, Defendants will continue a course of action that will result in further damages to Plaintiffs and the Classes and will likely retain the benefits of their wrongdoing.

66. Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth below.

## VI. COUNTS

### ONE

### Violations of Section 2-314 of the Uniform Commercial Code, Breach of Implied Warranty of Merchantability (On Behalf of Plaintiffs and the Multistate Class)

67. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

68. Section 2-314 of the Uniform Commercial Code (the "UCC") provides that a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

69. Plaintiffs and members of the Multistate Class purchased Serum in states that recognize the existence of implied warranties in the absence of direct privity or that recognize privity in vertical purchaser-manufacturer relationships.

70. L'Oreal manufactured, distributed, and marketed Serum and represented that Serum was fit for ordinary use.

71. L'Oreal is a "merchant" within the meaning of the UCC.

72. Serum is a "good" within the meaning of the UCC.

73. The contract between L'Oreal and the Plaintiffs and the Multistate Class was for the sale of goods and is therefore governed by the UCC.

74. L'Oreal breached the implied warranty of merchantability to Plaintiffs and members of the Class because Serum (i) would not pass without objection in the trade because it was defective and unsafe; (ii) was not fit for the ordinary purpose for which it is used (i.e, as a "leave-in" hair styling product); (iii) was not adequately contained, packaged and labeled (i.e., it lacked a warning label about risk of flammability when used with heated styling appliances); and (iv) did not conform to the promises or affirmations of fact made on the container or label (i.e., that it was impliedly safe to use with styling appliances).

75. Plaintiffs and members of the Multistate Class reasonably expected that the product, when used in the customary, usual, and reasonably foreseeable manner, would not be flammable.

76. By manufacturing, marketing, importing, and distributing such a product without a proper warning, L'Oreal breached its implied warranty of merchantability and is liable to Plaintiffs and the Multistate Class.

77. Plaintiffs and the other members of the Multistate Class have sustained damages as a result of L'Oreal's breaches.

78. During the Complaint Period, a personal injury lawsuit was filed against L'Oreal by a minor who suffered serious physical injury when the product burst into flames as a result of the minor's use of a hot straightening comb after she applied Serum to her hair. Thus, L'Oreal has actual notice of the unsafe and defective nature of the product and has had an opportunity to cure the defect.

79. In addition, on February 4, 2011, Plaintiffs notified L'Oreal in writing of the particular alleged breaches of implied warranties and demanded that it rectify the consequences of its conduct detailed above. However, L'Oreal failed to respond to such demand and to cure the defects in Serum.

80. Pursuant to sections 2-714 and 2-711 of the UCC, Plaintiffs and members of the Multistate Class are entitled to damages and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees.

**TWO**

**Violations of Uniform Commercial Code Section 2-315, Implied Warranty of Fitness For A Particular Purpose (On Behalf of Plaintiffs and the Multistate Class)**

81. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

82.    Section 2-315 of the UCC provides that, where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose.

83.    Plaintiffs and members of the Multistate Class purchased Serum in states that recognize the existence of implied warranties in the absence of direct privity or that recognize privity in vertical purchaser-manufacturer relationships.

84.    L'Oreal is a "merchant" within the meaning of the UCC.

85.    Serum is a "good" within the meaning of the UCC.

86.    Defendants specifically marketed the product as a "leave-in" product that could be applied on dry or wet hair. At the time of the sale of the product, Defendants knew or should have reasonably foreseen that Plaintiffs and members of the Multistate Class would use the product with heated styling products on wet hair, placing them at serious and foreseeable risk of burn injuries and damages.

87.    Plaintiffs and other members of the Multistate Class purchased the Serum with the particular purpose of styling their hair using heated styling appliances and reasonably relied on the L'Oreal's skill or judgment to furnish suitable goods.

88.    By manufacturing, marketing, importing, and distributing such a product without proper warning, L'Oreal breached its implied warranty of fitness for a particular purpose and is liable to Plaintiffs and the Multistate Class.

89.    Plaintiffs and the other members of the Multistate Class have sustained damages as a result of L'Oreal's breaches.

90.    During the Complaint Period, a personal injury lawsuit was filed against L'Oreal by a minor who suffered serious injury when the product burst into flames as a result of the minor's use of a hot curling comb after applying Se-

rum to her hair. Thus, L'Oreal has actual notice of the unsafe and defective nature of the product and it has had an opportunity to cure the defect.

91. In addition, on February 4, 2011, Plaintiffs notified L'Oreal in writing of the particular alleged breaches of implied warranties and demanded that L'Oreal rectify the consequences of its conduct detailed above. However, L'Oreal failed to respond to such demand and to cure the defects in Serum.

92. Pursuant to sections 2-714 and 2-711 of the UCC, Plaintiffs and members of the Multistate Class are entitled to damages and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees.

## THREE

**Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability, Sections 1792 and 1791.1(a) of the California Civil Code (On Behalf of Plaintiff Altamura and the California Class)**

93. Plaintiff Altamura repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

94. Plaintiff and members of the California Class are "retail buyers" within the meaning of Section 1791(b) of the California Civil Code.

95. Serum is a "consumer good" within the meaning of Section 1791(a) of the California Civil Code.

96. L'Oreal is a "manufacturer" of Serum Section 1791(j) of the California Civil Code.

97. L'Oreal impliedly warranted to Plaintiff Altamura and members of the California Class that Serum was "merchantable" within the meaning of Sections 1791.1(a) and 1792 of the California Civil Code.

98. L'Oreal breached the implied warranty of merchantability to Plaintiffs and members of the California Class because Serum (i) would not pass without objection in the trade because it was defective and unsafe; (ii) was not fit for

its ordinary purpose which it is used (i.e, as a "leave-in" hair styling product); (iii) was not adequately contained, packaged and labeled (i.e., it lacked a warning label about risk of flammability when used with heated styling appliances); and (iv) did not conform to the promises or affirmations of fact made on the container or label (i.e., that it was impliedly safe to use with styling appliances).

99. L'Oreal's failure to warn Plaintiffs and members of the California Class about the defective and unsafe quality of the product was willful.

100. As a proximate result of L'Oreal's breach of the implied warranty of merchantability, Plaintiff and members of the California Class sustained damages including but not limited to the loss in value of the Serum and the loss in usefulness of the Serum.

101. Pursuant to sections 1791.1(d) and 1794 of the California Civil Code, Plaintiff Altamura, on behalf of herself and the California Class are entitled to damages, civil penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees.

## FOUR

**Violations of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Fitness, Sections 1792.1 and 1791.1(b) of the California Civil Code (On Behalf of Plaintiff Altamura and the California Class)**

102. Plaintiff Altamura repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

103. Plaintiff and members of the California Class are "retail buyers" within the meaning of Section 1791(b) of the California Civil Code.

104. Serum is a "consumer good" within the meaning of Section 1791(a) of the California Civil Code.

105. L'Oreal is a "manufacturer" of Serum Section 1791(j) of the California Civil Code.

106. Defendants specifically marketed the product as a "leave-in" product that could be applied on dry or wet hair. At the time of the sale of the product, Defendants knew or should have known that Plaintiff Altamura and members of the California Class would (i) use the product with heated styling products on wet hair, placing them at serious and foreseeable risk of burn injuries and damages and (ii) reasonably rely on L'Oreal's skill or judgment to select or furnish suitable goods.

107. Plaintiffs and other members of the California Class did in fact purchase Serum with the particular purpose of styling their hair using heated styling appliances and Plaintiffs and other members of the California Class did in fact reasonably rely on L'Oreal's skill or judgment to furnish suitable goods.

108. By manufacturing, marketing, importing, and distributing such a product without a proper warning, L'Oreal breached its implied warranty of fitness for a particular purpose and is liable to Plaintiff Altamura and the California Class.

109. L'Oreal's failure to warn Plaintiffs and members of the California Class about the defective and unsafe quality of the product was willful.

110. As a proximate result of L'Oreal's breach of the implied warranty of fitness, Plaintiff and members of the California Class sustained damages, including but not limited to the loss in value of the Serum and the loss in usefulness of the Serum.

111. Pursuant to sections 1791.1(d) and 1794 of the California Civil Code, Plaintiff Altamura, on behalf of herself and the California Class are entitled to damages, civil penalties and other legal and equitable relief including, a right of reimbursement, as well as costs, expenses and attorneys' fees.

**FIVE**

**Violations of California Business & Professions Code, Section 17200, *et seq.*,**

**Unlawful, Unfair and Fraudulent Business Acts and Practices**
**(On Behalf of Plaintiff Altamura and the California Class)**

112. Plaintiff Altamura repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

113. L'Oreal's acts and practices as detailed herein constitute acts of unfair competition. L'Oreal has engaged in unlawful, unfair or fraudulent business acts and/or practices within the meaning of California Business & Professions Code, section 17200, et seq. L'Oreal need only violate one of the three prongs to be held strictly liable.

114. L'Oreal has engaged in "unlawful" business acts and practices by designing, manufacturing, licensing, promoting, and/or distributing Serum and presenting it as a safe, quality "leave-in" hair product when, in fact, Serum is flammable and extremely and unreasonably dangerous, particularly when used with heated hair styling appliances.

115. L'Oreal's business acts and practices violated various federal Food, Drug and Cosmetic Act regulations, including, inter alia, 21 CFR 740.1, which provides that cosmetics that may be hazardous to consumers (for example, cosmetics that are flammable) must bear appropriate label warnings.

116. L'Oreal's business acts and practices also violated various state laws, including, inter alia, the California Business and Professions Code, section 17500, et seq., the California Consumer Legal Remedies Act, California Civil Code, Section 1750, et seq., and the Song-Beverly Consumer Warranty Act, Section 1792 and Section 1791(1), subsection (a) and (b).

117. Plaintiffs reserve the right to identify additional provisions of the law violated by L'Oreal as further investigation and discovery warrants.

118. L'Oreal's failure to comply with the above statutes and regulations constitutes an unlawful business act or practice.

119.   Section 17200 of the California Business & Professional Code also prohibits any "unfair business act or practice."

120.   As described above, L'Oreal has engaged in "unfair" business acts or practices in that it failed to warn Plaintiff Altamura and the California Class that Serum was defective, unsafe to use with styling appliances, flammable, and posed a serious risk of physical injury to the neck, head and face.

121.   The utility of L'Oreal's conduct is not outweighed by the gravity of the harm to Plaintiff Altamura and the California Class.

122.   Plaintiff Altamura's and California Class' injury is substantial, is not outweighed by any countervailing benefit to consumers or competition, and is not one that consumers could have reasonably avoided.

123.   The unfairness of L'Oreal's actions outweighs any business justification, motive or reason therefore, particularly considering the legal alternatives that exist in the marketplace, such as placing an adequate warning label on the product similar to the practices of its various competitors.

124.   Defendants' conduct offends California public policy tethered to the False Advertising Law, which is intended to preserve fair competition and protect consumers from market distortions such as deceptive misrepresentation in labeling.

125.   L'Oreal's actions are immoral, unethical, unscrupulous, and offend established public policy, and have injured Plaintiff Altamura and other members of the California Class.

126.   Section 17200 also prohibits any "fraudulent business act or practice."

127.   L'Oreal's conduct constituted "fraudulent" business acts or practices in that its conduct had a tendency and likelihood to deceive persons to whom such conduct was and is targeted by designing, manufacturing, licensing, marketing and distributing Serum as a safe and quality "leave-in" hair when in fact Serum

was not suitable for ordinary uses and posed a serious risk or bodily harm, especially when used with heated styling appliances.

128.   L'Oreal had a duty to disclose the defective and unsafe nature of the product because it (i) knew or should have known about the flammability of the main ingredients at the time that Plaintiff Altamura and members of the California Class purchased the product; (ii) had exclusive knowledge of these material facts, which information was not known to Plaintiffs; and (iii) made a partial representation as to the products' flammability in the products' old packaging, but failed to disclose the material fact that it was unsafe to use with some types of styling appliances.

129.   Plaintiff Altamura and members of the California Class were deceived by L'Oreal's representations.

130.   Plaintiff Altamura and members of the California Class reasonably relied on Defendants' representations, including, inter alia, its directions for use of the product (as a "leave-in" product to be applied generously on wet or dry hair) and the absence of a warning against use with heated styling products.

131.   Plaintiff Altamura and members of the California Class have suffered injuries as a direct and proximate result of the unlawful, unfair, and fraudulent business practices of Defendants.

132.   Plaintiff Altamura and members of the Class would not have purchased Serum had they known of the defective and unsafe nature of the product.

133.   Section 17200 of the California Business & Professions Code also prohibits any "unfair, untrue or misleading advertising." For the reasons discussed below, Defendants have engaged in unfair, deceptive and misleading advertising in violation of Section 17200.

134.   Pursuant to section 17203 of the California Business and Professions Code, Plaintiff Altamura, on her own behalf and on behalf of the California Class seek restitution and a Court order enjoining Defendants from such future conduct

and any other such orders that maybe necessary to rectify the unlawful, unfair, and fraudulent business practices of Defendants, including requiring L'Oreal to recall the product and to provide a warning label on the product packaging.

**SIX**

**Violations of the Consumers Legal Remedies Act, California Civil Code Section 1750, *et seq.*, (On Behalf of Plaintiff Altamura and the California Class)**

135. Plaintiff Altamura repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

136. The California Consumer Legal Remedies Act, Section 1750 of the California Civil Code protects consumers against fraud, unlawful practices, and unconscionable commercial practices in connection with sale of any merchandise.

137. Plaintiff Altamura and members of the California Class are "consumers" as defined by Section 1761(d) of California Code because they sought or acquired Defendants' goods for personal, family, or household purposes.

138. Serum is a "good" within the meaning of the Section 1761(a) of the California Civil Code.

139. L'Oreal manufactured, licensed, distributed and falsely marketed Serum as a quality "leave-in" hair styling product that is safe to use when in fact it is flammable (particularly, when used with heated styling appliances) and is therefore extremely and unreasonably dangerous and unfit for ordinary uses. Such conduct constitutes violation of the California Consumer Legal Remedies Act.

140. Defendants violated and continue to violate the Consumer Legal Remedies Act by engaging in the following practices proscribed by section 1770(a), subsections (5), (7), (9), and (16) of the California Civil Code in transactions with Plaintiff Altamura and members of the California Class, which were intended to result in, and did result in, the sale of the Serum, in that Defendants: represented that Serum had characteristics, uses, and benefits which it did not

have; represented that Serum was of a particular standard, quality, and grade when it was of another; advertised Serum with the intent not to sell it as advertised; and represented that Serum had been supplied in accordance with previous representations when it had not.

141. Plaintiff Altamura and other members of the California Class reasonably relied upon and were deceived by Defendants' representations that the Serum was safe, defect-free and fit for ordinary uses.

142. As a proximate and direct result of Defendants' misrepresentations and unlawful and unconscionable commercial practices, Plaintiff Altamura and members of the California Class have been injured and suffered damages in that they have purchased products that are defective and unsafe to use.

143. Pursuant to section 1782(d) of the California Civil Code, Plaintiff Altamura, on behalf of herself and the California Class seek a Court order enjoining Defendants from such future conduct and any other such orders that maybe necessary to rectify the fraudulent, unlawful, and unconscionable commercial practices fraudulent business practices of Defendants, including requiring Defendants to recall the product and to provide a warning label on the product packaging.

144. On February 4, 2011, Plaintiffs served a written demand on Defendants pursuant to Civil Code, Section 1782(a). Thirty days have elapsed since Plaintiffs issued such demand to Defendants. Defendants have failed to make an appropriate correction, repair, replacement or other remedy within 30 days of Plaintiffs' demand or within a reasonable time. Plaintiffs are therefore entitled to maintain an action for damages under Sections 1780 and 1781. Plaintiffs request actual damages, restitution of property, punitive damages, injunctive relief and other relief that the Court deems proper, and reasonable attorneys' fees and costs, as permitted by Civil Code, Sections 1780 and 1782.

**SEVEN**
**Violations of the False Advertising Act,**
**California Civil Code Section 17500, *et seq.*,**
**(On Behalf of Plaintiff Altamura and the California Class)**

145.   Plaintiff Altamura repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

146.   Section 17500 of the California False Advertising Act prohibits the dissemination of statements that are untrue, misleading, and which are known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

147.   Defendants' acts and practices violated Section 17500 of the California False Advertising Act.

148.   Defendants disseminated untrue and misleading statements to Plaintiffs and members of the California Class about the quality and safety of Serum.

149.   Defendants' advertisements, particularly the Garnier and L'Oreal websites and the Serum's labeling, were untrue and misleading in material respects because they failed to disclose and warn consumers against the serious risk of harm posed by using Serum with a heated styling appliance, that the main ingredients of the product are flammable, and that the product is unsuitable for ordinary use.

150.   Defendants' failure to include an adequate warning on the product and their websites had the capacity, likelihood and tendency to deceive and confuse consumers into believing that Serum is in fact safe to use with heated styling appliances.

151.   Defendants' statements on their various websites were untrue and misleading as they represented that Defendants' products, such as Serum, underwent extensive testing to assure the safety and quality of such products for use by consumers.

152. Defendants, as the manufacturers of Serum, knew or should have known with the exercise of reasonable care that their statements about the safety and quality of the product were untrue and misleading.

153. Plaintiff Altamura and members of the California Class were induced to purchase Serum based on Defendants' untrue and misleading statements.

154. Plaintiff Altamura and members of the California Class were aware of and reasonably relied on Defendants' untrue and misleading statements.

155. Defendants disseminated untrue and misleading statements about Serum's quality and safety with the intent not to sell Serum as advertised.

156. Pursuant to section 17535 of the California Civil Code, Plaintiff Altamura, on behalf of herself and the California Class seeks restitution and a Court order enjoining Defendants from such future conduct and any other such orders as may be necessary to rectify Defendants' false advertising, including requiring Defendants to recall the product and to provide a warning label on the product packaging.

**EIGHT**

**Violations of Section 349 of the New York General Business Law, Deceptive Acts and Practices (On Behalf Of Plaintiff Pearly and the New York Class)**

157. Plaintiff Pearly repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

158. Plaintiff Pearly and other members of the New York Class are "consumers" as defined in Section 349 of the New York General Business Law.

159. During the Complaint Period, Defendants conducted trade and commerce in New York and elsewhere within the meaning of Section 349 of the New York General Business Law.

160. Defendants' acts and practices as detailed herein constitute deceptive practices under Section 349 of the New York General Business Law.

161.   Defendants' misleading and deceptive business practices adversely impacted a class of New York retail purchasers, and therefore, constitute consumer-oriented conduct under Section 349 of the New York General Business Law, and which resulted in a direct harm to the New York purchasers.

162.   Defendants disseminated untrue and misleading statements to Plaintiffs and members of the New York Class about the quality and safety of Serum.

163.   Defendants' advertisements on its websites and on the product packaging were untrue and misleading in material respects because they failed to warn consumers against the serious risk of bodily harm posed by using Serum with a heated styling appliance, the flammability of the main ingredients of the product, and the unsuitability of the product for the ordinary use of hair styling.

164.   Defendants' statements were untrue and misleading as they represented that Defendants' products, such as Serum, underwent extensive testing to assure the safety and quality of such products for use by consumers.

165.   Defendants' statements had the capacity, likelihood and tendency to deceive and confuse consumers into believing that Serum is in fact safe to use with heated styling appliances.

166.   Defendants, as the manufacturers of Serum, knew or should have known with the exercise of reasonable care that their statements about the safety and quality of the product were untrue and misleading at the time that Plaintiffs and members of the New York Class purchased the product.

167.   Plaintiff Pearly and members of the New York Class were aware of and reasonably relied upon statements made by L'Oreal regarding the safety and the quality of the product.

168.   Defendants intended for Plaintiff Pearly and members of the New York Class to rely on Defendants' acts of concealment and omissions so that Plaintiff and other New York Class members would purchase Serum and/or so that Defendants could charge an inflated price for Serum.

169.   Defendants' acts materially misled Plaintiff Pearly and members of the New York Class. Had Defendants disclosed to Plaintiffs and the New York Class material information regarding the flammability of Serum when used with hair styling appliances, Plaintiffs and the New York Class members would not have purchased Serum or they would not have paid a premium for the product.

170.   The deceptive acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiff Pearly and other members of the New York Class.

171.   As a result of the defective and unsafe nature of Serum, Plaintiff Pearly and other members of the New York Class have purchased products that are not fit for ordinary use as "leave-in" hair styling products.

172.   Defendants knowingly and willfully violated Section 349 of the New York General Business Law.

173.   Pursuant to section 349 of the New York General Business Law, Plaintiff Pearly seeks an order enjoining Defendants from such future conduct and any such order that may be necessary to rectify the misleading and deceptive business practices of Defendants, including requiring L'Oreal to issue a recall of the product and to place an adequate warning label on the packaging of the product.

174.   Pursuant to section 349 of the New York General Business Law, Plaintiff Pearly, on her own behalf and on behalf of the New York Class, seeks actual, statutory, and treble damages, costs and expenses, pre and post-judgment interest, and attorneys' fees.

**NINE**

**Violations of Section 350 of the New York General Business Law, False Advertising (On Behalf of Plaintiff Pearly and the New York Class)**

175. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

176. Defendants' advertisements, particularly the Garnier and L'Oreal websites and the product's labeling, were misleading in material respects because they fail to disclose and warn consumers against the serious risk of harm posed by using Serum with a heated styling appliance, that the main ingredients of the product are flammable, and that the product is unsuitable for ordinary use.

177. Plaintiff Pearly and the New York Class were misled and/or deceived by the omission of these material facts. Defendants, due to their superior knowledge of the facts herein, were required to disclose these facts to Plaintiff and the New York Class.

178. The foregoing acts, omissions and practices proximately caused Plaintiff Pearly and other members of the New York Class to suffer actual injury.

179. Pursuant to section 349 of the New York General Business Law, Plaintiff Pearly, on her own behalf and on behalf of the New York Class, seeks an order enjoining Defendants from such future conduct and any such order that may be necessary to rectify the misleading and deceptive business practices of Defendants, including requiring L'Oreal to issue a recall of the product and to place an adequate warning on the product.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the Classes, respectfully pray:

(a) For an order certifying this action as a class action, appointing Plaintiffs as representatives of the Classes, and appointing their attorneys as counsel for the Classes;

(b) For actual, statutory, and treble damages for all applicable claims in amounts to be proven at trial;

(c) For an order permanently enjoining Defendants from engaging in the unlawful practices alleged herein and requiring L'Oreal to issue a recall of the product at issue in this Complaint and to provide an adequate warning label on the product.

(d) For an award of attorneys' fees, costs, and expenses;

(e) For an award of pre and post-judgment interest; and

(f) For such other and further relief as may be just and proper.

Dated: June 29, 2011

Respectfully submitted,

By: ______________________

Avi Kreitenberg (SBN 266571)

akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 S. Beverly Drive, Suite 601
Los Angeles, CA 90035
Telephone: (310) 400-1050
Facsimile: (310) 400-1056
One of the Attorneys for Plaintiffs

Grace Parasmo (not admitted)
gparasmo@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:(212) 920-3072
Facsimile: (212) 920-3081

Jeremy R. Wilson (not admitted)
jeremy@wilsontrosclair.com
Wilson Trosclair & Lovins, PLLC
302 North Market Street, Suite 510
Dallas, TX 75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475

Counsel for Plaintiffs

**JURY TRIAL DEMAND**

Plaintiffs hereby demand trial by jury of all issues so triable.

Dated: June 29, 2011

Respectfully submitted,

KAMBERLAW, LLP

Avi Kreitenberg (SBN 266571)
akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 S. Beverly Drive, Suite 601
Los Angeles, CA 90035
Telephone: (310) 400-1050
Facsimile: (310) 400-1056

One of the Attorneys for Plaintiffs

Grace Parasmo (not admitted)
gparasmo@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:(212) 920-3072
Facsimile: (212) 920-3081

Jeremy R. Wilson (not admitted)
jeremy@wilsontrosclair.com
Wilson Trosclair & Lovins, PLLC
302 North Market Street, Suite 510
Dallas, TX 75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475

Counsel for Plaintiffs

**DECLARATION OF AVI KREITENBERG**

I, Avi Kreitenberg, hereby declare on oath as follows:

1. I am an attorney licensed to practice law in the state of California. I am over the age of 18 years and I have personal knowledge of the matters attested to herein. If called upon to testify, I would and could competently do so.

1. I make this declaration pursuant to California Civil Code section 1780(c) on behalf of my clients, Plaintiffs CATHERINE ALTAMURA and LISA PEARLY on behalf of themselves and all others similarly situated.

2. Defendant L'Oreal USA, Inc. is a Delaware corporation with its principal place of business at 575 5th Avenue, New York. L'Oreal USA, Inc. does business in California and throughout the United States.

3. Defendant, L'Oreal USA Products, Inc. is a Delaware corporation with its principal place of business at 575 5th Avenue, New York. L'Oreal USA Products, Inc. does business in California and throughout the United States.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Dated this 29th day of June 2011 at Los Angeles, California.

By:

Avi Kreitenberg
One of the Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

**CV11- 5465 GW (CWx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Avi Kreitenberg (SBN 266571)
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, CA 90035

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CATHERINE ALTAMURA; and LISA PEARLY, on Behalf of Themselves and All Others Similarly Situated<br>PLAINTIFF(S)<br>v.<br>L'OREAL USA, INC. and L'OREAL USA PRODUCTS, INC.<br>DEFENDANT(S). | CASE NUMBER<br>CV11-05465 GW(CWx)<br><br>**SUMMONS** |

TO: DEFENDANT(S): L'Oreal USA, Inc. and L'Oreal USA Products, Inc., c/o Corporation Service Company
80 State Street, Albany, NY 12207

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ______________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Avi Kreitenberg, whose address is 1180 South Beverly Drive, Suite 601, Los Angeles, CA 90035. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JUN 30 2011

By: ______________________
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Avi Kreitenberg (SBN 266571)
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, CA 90035

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CATHERINE ALTAMURA; and LISA PEARLY, on Behalf of Themselves and All Others Similarly Situated<br>PLAINTIFF(S)<br>v.<br>L'OREAL USA, INC. and L'OREAL USA PRODUCTS, INC.<br>DEFENDANT(S). | CASE NUMBER<br>CV11-05465 GN (CWx)<br><br>**SUMMONS** |

TO: DEFENDANT(S): L'Oreal USA, Inc. and L'Oreal USA Products, Inc., c/o Corporation Service Company 80 State Street, Albany, NY 12207

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ______________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Avi Kreitenberg, whose address is 1180 South Beverly Drive, Suite 601, Los Angeles, CA 90035. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: JUN 30 2011

Clerk, U.S. District Court

SEAL

By: JULIE PRADO
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*