UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|----------|-----------------------------------------------------------------|------|--------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|------------------------|---------------------|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|-----------------------------------|----------------------------------|
| David Parisi<br>Grace Tersigni | Dennis Ellis<br>Katherine Murray |

**Proceedings:**     MOTION TO CERTIFY CLASS (Docket #91, filed May 6, 2013)

## I.     INTRODUCTION

On February 3, 2011, plaintiffs Jill Guido, a California resident, and Natalie Lefebvre, a Texas resident, commenced this action in this Court by filing a complaint against defendants L'Oreal, USA, Inc. and L'Oreal USA Products, Inc. (collectively "L'Oreal") in Case No. CV 11-1067 CAS (JCx). Meanwhile, on February 4, 2011, plaintiffs Catherine Altamura, a California resident, and Lisa Pearly, a New York resident, filed a similar complaint in the United States District Court for the Southern District of New York against the same defendants. On May 5, 2011, Altamura and Pearly voluntarily dismissed the New York action and refiled the action in this Court on June 30, 2011. See Case No. CV 11-5465 CAS (JCx). By order dated September 19, 2011, the Court consolidated the two cases for pretrial purposes. Additionally, the Court granted plaintiffs' motion for class certification on May 7, 2012, but partially reconsidered this motion on June 25, 2012, and found that the existing class representatives did not satisfy the typicality requirement of Federal Rule of Civil Procedure 23(a).

On September 21, 2012, plaintiffs named Brittany Baisley and Stephanie Germann as new proposed class representatives for a putative New York Class, and named Juliane Hayes as the new proposed class representative for a putative California Class. Dkt. #61.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

### CIVIL MINUTES - GENERAL

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Additionally, pursuant to a stipulation by the parties, plaintiffs submitted a First Consolidated Class Action Complaint ("FCAC") on November 16, 2012. The FCAC asserts claims on behalf of putative classes of California and New York residents who purchased a L'Oreal hair care product known as Garnier Fructis Sleek & Shine Anti-Frizz Serum ("Serum"). The FCAC alleges seven claims for relief: (1) breach of implied warranty of merchantability, (2) breach of implied warranty of fitness, (3) violation of California Business and Professions Code § 17200 ("UCL"), (4) violation of the California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, (5) false advertising under California Business and Professions Code § 17500 ("FAL"), (6) deceptive acts and practices pursuant to New York General Business law § 349, and (7) false advertising pursuant to New York General Business Law § 350.

On May 6, 2013, plaintiffs filed a motion to certify a class. L'Oreal filed an opposition on May 28, 2013, and plaintiffs filed a reply on June 13, 2013. After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Serum is a hairstyling product manufactured, distributed, and marketed by L'Oreal for sale in retail outlets nationwide. Declaration of Grace Tersigni ("Tersigni Decl.") Exh. 1, at 24–25 (deposition of Garnier Senior VP Katheryn Peeler). Serum was launched in 2004 for a suggested retail price of $5.99 per bottle, which has remained constant throughout the product's existence in the market. Id. at 69:9–12. During the Class Period, defined below, L'Oreal sold approximately 9.9 million units of Serum throughout the nation. Id., Exh. 2 at 1.

Serum's label and packaging has changed since its introduction to the market. When it was launched in 2004, Serum was sold in a clear green round-shaped bottle with a label that included a flammability warning written in green text. Near the end of 2006, Garnier removed denatured alcohol as an ingredient in Serum in order to comply with California's Volatile Organic Compound regulations, Cal. Code Regs. tit. 17, § 94509(a). Declaration of Dennis Ellis ("Ellis Decl."), Exh. E at 56:3–17 (Peeler deposition). At the beginning of 2007, Garnier altered the bottle's shape, from a round shape to a bell shape,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

and removed the flammability warning.  Id. at 61:21–62:19.  Other than this change in Serum's packaging, the labeling is uniform, and does not vary from bottle to bottle.

Plaintiffs contend that Serum is flammable, even though the denatured alcohol has been removed, and that the product should been sold with a flammability warning.  L'Oreal, however, argues that because the alcohol has been removed from Serum, it no longer requires a flammability warning.

As stated above, the new proposed class representatives are Brittany Baisley ("Baisley"), Juliane Hayes ("Hayes"), and Stephanie Germann ("Germann").  Plaintiff Hayes lives in California, and purchased two bottles of Serum in California between 2010 – 2011.  Hayes Decl. ¶ 2 – 3.  Baisley and Germann are New York residents, and both purchased the product in New York several times after February 2008.  Baisley Decl. ¶ 2 – 3; Germann Decl. ¶ 2 – 3.  Additionally, plaintiff Germann purchased a bottle of Serum prior to 2008 that contained what Germann characterizes as "a tiny and hidden flammability warning" that "was inconspicuous and blended with everything else on the page."  Germann Decl. ¶ 5.[1]  All three plaintiffs state that they either would not have purchased Serum or would have paid substantially less for the product if they had known it was flammable.  Germann Decl. ¶ 6; Hayes Decl. ¶ 6; Baisley Decl. ¶ 7.  Plaintiffs also state that after they learned of Serum's flammability, they stopped using the product.  Germann Decl. ¶ 7; Hayes Decl. ¶ 7; Baisley Decl. ¶ 8.

Plaintiffs seek to represent the following classes:

California Class: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of California at any time during the period of February 2, 2008 to the present.

---

[1] Prior to her deposition in this case, Germann did not realize that the pre-2008 bottle of Serum she had purchased contained a flammability warning.  See Germann Decl. ¶ 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

New York Class: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of New York at any time during the period of February 4, 2008 to the present.

## III.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ---, ---, 131 S.Ct. 2541, 2548 (2011); Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b). Dukes, 131 S.Ct. at 2548. Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|----------|-----------------------------------------------------------------|------|--------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Windsor, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. Id. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Id. at 1190–1993. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535–39 (2d. 3d. 1986)).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 131 S.Ct. at 2551. This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id.

## IV.   ANALYSIS

### A.   Rule 23(a) Requirements

#### 1.   Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. See Fed. R. Civ. P. 23(a)(1). Here, the proposed California and New York classes are sufficiently numerous. During the Class Periods, which are essentially identical, L'Oreal manufactured and shipped approximately 9.9 million units

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

of Serum nationwide.  Tersigni Decl., Exh. 2.  According to 2010 U.S. census data, California residents make up 12 percent of the U.S. population, while New York residents make up 8.1 percent of the U.S. population.  See id., Exh. 15.  Assuming L'Oreal sells Serum proportionally across the country, it can be estimated that approximately 1.1 million units were sold in California and 800,000 units were sold in New York.  Although defendants argue that evidence about the amount of Serum sold does not demonstrate that the class satisfies the numerosity requirement, this type of evidence is commonly used to determine whether numerosity is satisfied.  See Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 448 (N.D. Cal. 1994) (extrapolating census data in order to find numerosity); Colorado Cross-Disability Coalition v. Taco Bell Corp., 184 F.R.D. 354, 358 (D. Colo. 1999) ("Census data are frequently relied on by courts in determining the size of proposed classes.").  Accordingly, the Court finds that the numerosity requirement is satisfied.

    2.  Commonality

   "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 131 S.Ct. at 2551 (internal quotation marks and citations omitted).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id.

   The gravamen of plaintiffs' claims in this case is that Serum should have, but did not, contain a flammability warning.  See Dkt. #85.  Accordingly, the commonality requirement is satisfied due to the presence of the following common factual and legal questions:

    •  Whether Serum's packaging and marketing materials are unlawful, unfair, deceptive, or misleading to reasonable consumers under the UCL, CLRA, and GBL;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

- Whether the labels that instructed consumers to use "as much [Serum] as needed for your hair type," "do not rinse," and "[f]or the sleekest look, style using brush and blowdryer" are deceptive to the average reasonable consumer in light of Serum's alleged flammability and the lack of a flammability warning;

- Whether a reasonable consumer would expect that Serum would contain a warning as to its flammability pursuant to the requirement of the Food, Drug and Cosmetic Act's regulations, 21 C.F.R. 740.1, that hazardous cosmetics contain appropriate labels;

- Whether plaintiffs had a reasonable expectation that Serum was not dangerous around flames or other sources of heat;

- Whether L'Oreal tested Serum "under conditions of customary use and reasonably foreseeable conditions of misuse" under the FDA's labeling guidelines;

- Whether L'Oreal had a duty to disclose the alleged flammability of Serum;

- Whether it was foreseeable to L'Oreal that consumers would use Serum near heated sources;

- Whether L'Oreal concealed material information regarding the flammability of Serum from plaintiffs;

- Whether Serum is in fact flammable; and

- What the true market value of Serum is.

Because Serum was packaged and sold uniformly across the nation, these questions can be resolved "in one stroke."  Moreover, answers to these questions are "central to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

validity" of each class member's claims because, as discussed in more detail in the Court's predominance analysis below, each class member's claim hinges on (1) whether a reasonable consumer would have been deceived by Serum's packaging, (2) what information L'Oreal knew or had access to regarding Serum's flammability, and (3) what the true market value of Serum was given its alleged flammability. Dukes, 131 S.Ct. at 2551; see section IV.B.1, *infra*.

L'Oreal's arguments to the contrary are unpersuasive. Sanchez v. Wal Mart Stores, Inc., 2009 WL 1514435, at *3 (E.D. Cal. 2009), upon which L'Oreal chiefly relies, contravenes California law. There, the court ruled that putative class members' individual reasons for purchasing a product bears on commonality under the UCL. Id. at *4. However, that reasoning appears to be inconsistent with the California Supreme Court's reasoning in In re Tobacco II, 46 Cal. 4th 298, 312, 327 (2009), which was handed down just ten days before Sanchez. Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 481 (C.D. Cal. 2012) ("To the extent the holding in Sanchez was ever accurate—which this Court very much doubts—Sanchez is certainly no longer good law . . ."). Additionally, the Ninth Circuit has followed In re Tobacco II with regard to the question of whether reliance must be shown as to absent class members under the UCL. See Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 595 (9th Cir. 2012) ("Under California's UCL, restitution is available to absent class members without individualized proof of deception, reliance, or injury.").

The Court therefore concludes that the commonality requirement has been satisfied.

> 3.     Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Costco, 657 F.3d at 984 (quoting Hanlon, 976

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

F.3d at 508)).  Thus, typicality is satisfied if the plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020.  Additionally, where a class representative is subject to unique defenses, typicality may not be satisfied.  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

Each putative class representative purchased Serum during the class period in either New York or California, and has stated that she would not have purchased Serum at its historical market price if she had known it was flammable.  The requirement of typicality is, therefore, *prima facie* met for each proposed class representative.  L'Oreal argues, however, that additional facts about each representative show that they are subject to unique defenses.

According to L'Oreal, Germann is subject to unique defenses because she purchased Serum prior to 2007, and therefore purchased at least one bottle of Serum containing a flammability warning label.  Germann testified at her deposition that she not only purchased a pre-2007 bottle of Serum, but that at the time of purchase, she failed to notice a flammability warning label, even though Serum bottles marketed at that time carried warnings.  Germann Decl. ¶ 5; Germann Depo. at 153:18 – 25.  L'Oreal thus could argue at trial that because Germann purchased a pre-2007 bottle of Serum without noticing a flammability warning, Germann would have purchased post-2007 bottles of Serum at the $6 market price even if they had contained a flammability warning.  If credited by a trier of fact, a defense of non-reliance might well succeed, in which case her individual claims under the New York GBL sections 349 – 350 might fail.  See Ackerman v. Coca-Cola Co., 2010 WL 2925955, at *22 (E.D. N.Y. 2010) (describing elements of a claim under New York GBL §§ 349 – 350).  Additionally, her purchase of a pre-2007 bottle shows that she has been exposed to a warning label on a Serum bottle, whereas many class members who only purchased Serum during the class period likely have never seen a flammability warning on any version of the product.  This divergence between her experience and the experience of several class members renders her claims atypical.  Hanon 976 F.2d at 508 (concluding that typicality was not satisfied because the named plaintiff's "unique background and factual situation require[d] him to prepare to meet defenses that are not typical of the defenses which may be raised against other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|----------|---------------------------------------------------------------|------|--------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

members of the proposed class"). Consequently, Germann is not an appropriate class representative.

L'Oreal argues that Baisley is uniquely subject to defense of *laches* because, prior to speaking with plaintiffs' counsel, Baisley purportedly did not know that Serum was flammable, and generally knew little about the facts underlying this case. "Laches is defined as such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity." Matter of Barabash, 31 N.Y.2d 76, 21 (1972). L'Oreal cites no authority for the proposition that a claim can be barred by the defense of *laches* because the plaintiff only learns about the facts underlying her claim after speaking with counsel, nor has L'Oreal explained how it has suffered prejudice from any alleged delay. Consequently, L'Oreal has not offered a persuasive reason why Baisley's claims are not typical of the class.

Finally, L'Oreal argues that plaintiff Hayes is subject to unique defenses because, purportedly, Hayes stated in her deposition that she might have bought Serum even if it had contained a flammability warning, and is not pursuing this case in order to seek a refund of Serum's purchase price. These arguments mischaracterize Hayes' deposition testimony. First, Hayes never testified that she might have bought Serum had she known it was flammable. Hayes' testified that she considers a flammability warning on a hair product to be a relevant consideration in her decision regarding whether to purchase the product. Hayes Depo. at 175:23 – 176:3. While she may have been somewhat tentative when responding to questions at her deposition, she never stated that she would have purchased a flammable product. Moreover, in a declaration submitted in connection with plaintiffs' class certification motion, Hayes makes clear that she would not have purchased Serum if she had known it was flammable. Hayes' Decl. ¶ 7. Second, Hayes never stated that she was not seeking a refund of Serum's purchase price. At Hayes' deposition, counsel for L'Oreal asked Hayes "Well, what do you want to get out of this case?" Hayes Depo. at 190:6 – 7. Hayes explained that due to the low purchase price of Serum, she, understandably, was not motivated to act as a class representative due to the prospect of a large monetary recovery for herself. See AT&T Mobility v. Concepcion, 131 S.Ct. 1740, 1761 (2011) (Breyer, J., dissenting) ("[O]nly a lunatic or fanatic sues for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

$30.") (quoting <u>Carnegie v. Household Intl'l, Inc.</u>, 376 F.3d 656, 661 (7th Cir. 2004)). Instead, she explained that she wanted "the proper warning labels to be there just so that people know if there's a danger with what they're using or not." <u>Id.</u> at 191:10 – 12. Nothing about this testimony shows that Hayes' claims are atypical of the class. It merely reflects the practical reality in many consumer class actions: the infeasibility and lack of motivation to pursue individual cases due to small damages.

Therefore, plaintiffs Hayes and Baisley have claims typical of the class, and the requirement of typicality is satisfied.

4.     Adequacy

To establish adequacy of representation, the issue is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." <u>Hanlon</u>, 150 F.3d at 1020.

Here, there is no dispute regarding whether the interests of plaintiffs and the class are aligned. L'Oreal does, however, contest whether plaintiffs and their counsel will vigorously litigate the interests of the class. Specifically, L'Oreal argues that the Court should not certify the class because the named plaintiffs lack personal knowledge about the litigation, and only sought to become plaintiffs after being contacted by counsel. Relying on <u>Bodner v. Oreck Direct, LLC</u>, L'Oreal argues that plaintiffs' counsel are the "driving force" behind the litigation, and that this "cart before the horse approach to litigation is not the proper mechanism for the vindication of legal rights." 2007 WL 1223777, at *2.

"Rule 23 should not be used to defeat the ends of justice by facilitating the dismissal of class action complaints involving unsophisticated named plaintiffs." <u>Buus v. WAMU Pension Plan</u>, 251 F.R.D. 578, 587 (W.D. Wash. 2008); <u>Rankin v. Rots</u>, 220 F.R.D. 511, 521 (E.D. Mich. 2004). A representative plaintiff's lack of detailed, comprehensive knowledge about the legal technicalities of the claims asserted in class litigation therefore provides no basis on which to deny a motion for class certification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Gunnells v. Healthplan Services, Inc., 348 F.3d 417, 430 (4th Cir. 2003) ("It is hornbook law . . . that in a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative."); Baffa v. Donaldson, Lufkin & Jenrette Securities Corp., 222 F.3d 52, 61 (2d. Cir. 2000). Rudimentary knowledge of the claims asserted suffices to satisfy adequacy. See Rankin, 220 F.R.D. at 521. Gaps in a class representatives' knowledge about the case may make his or her claims subject to a unique defense, but this concern is cognizable under the typicality prong of the analysis, not adequacy. Baffa, 222 F.3d at 61.

The class representatives must, however, have some knowledge of the case. "Individuals are not adequate representatives of a class when it appears that they have abdicated any role in the case beyond that of furnishing their names as plaintiffs." Pryor v. Aerotek, 278 F.R.D. 516, 529 – 530 (C.D. Cal. 2011); see also Welling v. Alexy, 155 F.R.D. 654, 658 (N.D. Cal. 1994). Without involvement in the case and a basic knowledge of the facts, a class representative is unable to make informed decisions about the litigation or guard against potential conflicts of interest involving class counsel. Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1077 – 78 (2d Cir. 1995).

Here, there is no indication that the proposed class representatives are ignorant about either the basic facts underlying the case or their duties as class representatives. While they may have first learned about Serum's alleged flammability from plaintiffs' counsel, this is not disqualifying, especially in light of counsel's explanation that the key facts underlying this case were only uncovered after costly testing. Consequently, there is no basis on which to conclude that the proposed class representatives' knowledge regarding the facts of the case renders them inadequate.

Additionally, the fact that plaintiffs were solicited by counsel does not undermine a finding of adequacy. There is nothing inherently improper with the recruitment of class representatives, and where existing named plaintiffs become unavailable or unsuitable, allowing the recruitment of replacements is even recommended. Manual for Complex Litigation (Fourth) § 21.26; In re Vitamin C Antitrust Litigation, 279 F.R.D. 90, 108

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

(E.D. N.Y. 2012).  Moreover, even where solicitation of clients is improper under rules of professional responsibility, denial of class certification is not an appropriate remedy. Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1324 (11th Cir. 2008).

The adequacy requirement of Rule 23(a) is therefore satisfied.

**B.     Rule 23(b) Requirements**

Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162–63 (9th Cir. 2001).

1.     Predominance

The predominance inquiry "trains on legal or factual questions that qualify each class member's case as a genuine controversy." Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 625 (1997).  "When one or more of the central issues in the action are common to the class and can be said to predominate," a class action will be considered proper "even though other matters will have to be tried separately." Gartin v. S&M NuTec LLC, 245 F.R.D. 429, 435 (C.D. Cal. 2007).  "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." Amchem, 521 U.S. at 625.

For the reasons set forth below, the Court finds that common issues predominate over individualized issues regarding liability and damages for the New York class, but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

not regarding damages for the California class.  As stated above, the fundamental contention underlying plaintiffs' claims is that Serum should have contained a flammability warning.  Whether L'Oreal's alleged omission of a flammability warning violated the UCL, CLRA, FAL, Song-Beverly Act, and GBL presents common factual and legal issues.  Due to the lack of expert testimony supporting plaintiffs' theory of classwide relief, however, certification is improper at this stage for the California class, as explained in more detail below.

Because the predominance requirement is "more demanding" than Rule 23(a)'s commonality requirement, the Court determines, for each claim for relief, whether common questions predominate.  <u>Amchem</u>, 521 U.S. at 624.

      a.     Liability

Plaintiffs have asserted three categories of claims for relief: (1) false advertising claims under California consumer protection statutes, (2) false advertising claims under New York consumer protection statutes, and (3) claims for breach of warranty under the Song-Beverly Act.  The Court analyzes each category of claims in turn.

The California consumer fraud statutes underlying plaintiffs' claims are the UCL, CLRA, and FAL.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The statute is phrased in the "disjunctive," and, as a result, is violated where a defendant's act or practice is unlawful, unfair, or fraudulent.  <u>Prata v. Super. Ct.</u>, 91 Cal. App. 4th 1128, 1137 (2001).  Similarly, the CLRA provides relief  to "any consumer who suffers any damage as a result of the use or employment" of any unlawful "method, act, or practice."  Cal. Civ. Code § 1780(a).  Likewise, the FAL broadly prohibits the dissemination of advertising that is deceptive, untrue, or misleading.  Cal. Bus. & Prof. Code § 17500; <u>Jolley v. Chase Home Finance, LLC</u>, 213 Cal. App. 4th 872, 906 – 907 (2013).

False or deceptive advertising is actionable under each of these statutes. Additionally, all three statutes invoke the "reasonable consumer test" to determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

whether allegedly false or deceptive advertising is unlawful.  Colgan v. Leatherman Tool Group, 135 Cal. App. 4th 663, 682 (2006); Paduano v. American Honda Motor Co., Inc., 169 Cal. App. 4th 1453, 1497 (2009).  "A reasonable consumer is the ordinary consumer acting reasonably under the circumstances, and is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture."  Colgan, 135 Cal. App. 4th at 682.  Due to the similarity between these statutes, they are often analyzed together.  Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012).

Both affirmative misrepresentations and deceptive or misleading omissions are actionable under these statutes.  Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, Ehrlich v. BMW of North America, LLC, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010).  In order to state a claim for wrongful omission, a defendant must have a duty to disclose the omitted facts, which occurs in four situations: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."  Ehrlich, 801 F. Supp. 2d at 916; Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 255 – 256 (2011).

Relief under the UCL and FAL is available "without individualized proof of deception, reliance and injury," so long as the named plaintiffs demonstrate injury and causation.  Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1289 (Cal. Ct. App. 2002); In re Tobacco II, 46 Cal.4th at 326–27.  Additionally, individualized proof of reliance and causation is not necessary under the CLRA.  A plaintiff may recover under the CLRA as long as he or she demonstrates a causal relationship between false advertising and injury, and causation can be shown by proving the materiality of an alleged omission.  Parkinson v. Hyundai Mot. Am., 258 F.R.D. 580, 595–96 (C.D. Cal. 2008); Stearns, 655 F.3d at 1022 (holding that materiality is established "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question").  "[T]he causation required by the [CLRA] does not make plaintiffs' claims unsuitable for class treatment" because "[c]ausation as to each class member is commonly proved more likely than not by materiality."  Mass. Mut., 97 Cal. App. 4th at 1292.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|----------|------------------------------------------------------------------|------|--------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Common questions predominate regarding whether L'Oreal has violated the false advertising prohibitions laid out in these statutes. Since these statutes provide for a "reasonable consumer" standard of liability, liability issues under the California consumer protection statutes will focus on the nature of the advertising and packaging of Serum, not whether each and every class member would be deceived given their actual level of sophistication. Additionally, because the "reasonable consumer" test has an objective focus, it is amenable to resolution through common evidence, not individualized inquiries.

Similarly, common issue predominate regarding reliance and causation because none of the California consumer protection statutes require individualized proof of these elements. Under the CLRA, plaintiffs may prove causation on a classwide basis by demonstrating the materiality of the omissions. Since materiality concerns objective features of allegedly deceptive advertising, not subjective questions of how it was perceived by each individual consumer, whether an omission is material presents a common question of fact suitable for class litigation. <u>Mass. Mut.</u>, 97 Cal. App. 4th at 1294. Moreover, under the UCL and FAL, only the named plaintiffs are required to establish reliance and causation, not each class member. Individualized issues therefore will not predominate over questions common to the class, because this form of individualized proof is not required.[2]

Therefore, contrary to L'Oreal's suggestions, resolution of the class claims does not require an individualized inquiry to determine whether each member of the class was subjectively deceived by Serum's packaging, nor are individualized inquiries needed to

---

[2] Plaintiff Hayes submitted a declaration stating that she would not have purchased Serum if she had known it was flammable, and therefore has produced evidence of reliance and injury. Hayes Decl. ¶ 6; <u>Kwikset Corp. v. Superior Court</u>, 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

determine how the packaging affected each class member. California law allows these questions to be resolved on a classwide basis by applying an objectively reasonable average consumer standard to common proof that focuses on the nature of the advertising and its deceptive character. Common questions will therefore predominate regarding liability under the California consumer protection statutes.

L'Oreal's arguments to the contrary made in reliance on Mazza v. American Honda Motor Co., 666 F.3d 581, (9th Cir. 2012), are misplaced, because the facts of Mazza are distinguishable from the present case. There, the Ninth Circuit "agree[d] with Honda's contention that the misrepresentations at issue here do not justify a presumption of reliance" under the UCL because "it is likely that many class members were never exposed to the allegedly misleading advertisements, insofar as advertising of the challenged system was very limited." Mazza, 666 F.3d at 595. Here, the challenged false advertising is not a limited advertising campaign that only affected a limited portion of the class. Rather, the alleged omissions in this case relate to the packaging of Serum itself, which has not materially changed over the course of the Class Period. Accordingly, the class members—who are defined, inter alia, as purchasers and users of Serum—were necessarily "exposed" to defendants' alleged misleading packaging of Serum, in contrast to the putative class in Mazza. Cf. Mazza, 666 F.3d at 595; Cohen, 178 Cal. App. 4th at 980.

The Court next turns to the New York claims. The New York consumer protection statutes at issue in case are similar to the California statutes discussed above. In order to recover for a violation of New York's GBL § 349, for deceptive business practices, or § 350, for false advertising, a plaintiff must show: "(1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the plaintiff was thereby injured." Ackerman v. Coca-Cola Co., 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010). See also City of New York v. Smokes.com, Inc., 883 N.Y. 3d 616, 622 (2009). As with California's UCL, the "standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct." Ackerman, 2010 WL 2925955, at *22 (citing Marcus v. AT&T, 138 F.3d 46, 64 (2d Cir. 1998)). Omissions are actionable under these laws

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

where the defendant is under a duty to disclose the omitted facts. <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank</u>, 85 N.Y. 2d 20, 25 (1995). A duty to disclose exists where a "business alone possesses material information that is relevant to the consumer and fails to provide this information." <u>Id.</u> at 26.

A claim for deceptive business practices pursuant to § 349 does not require a demonstration of reliance, although a claim pursuant to § 350 does. However, under New York law, there is a presumption of reliance when the defendant controls the relevant information and a consumer of ordinary intelligence could not discover the true state of affairs. <u>Leider v. Ralfe</u>, 387 F. Supp. 2d 283, 293, 296 (S.D.N.Y. 2005). Moreover, where consumers allege that they paid a premium for the product based on deceptive advertising—as plaintiffs do here—they have adequately alleged an injury under § 350. <u>Ackerman</u>, 2010 WL 2925955, at *23.

Accordingly, as with the California claims, liability under the New York statutes can be established with common proof. Individualized proof of reliance is not necessary, and as explained above, whether a reasonable consumer would have been deceived by Serum's packaging is an objective inquiry that focuses on that packaging. Common questions therefore predominate regarding L'Oreal's liability under the New York consumer protection statutes.

Finally, the Court considers plaintiffs' breach of warranty claims under the Song-Beverly act. To establish a violation of the Song-Beverly Act, the plaintiff must prove that goods sold in California were not merchantable. Cal. Civ. Code §§ 1790 <u>et seq.</u> The Song-Beverly Consumer Warranty Act defines the implied warranty of merchantability as follows:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

Cal. Civ. Code § 1791.1.  "[A] plaintiff claiming breach of an implied warranty of merchantability must show that the product did not possess even the most basic degree of fitness for ordinary use."  Keegan v. American Honda Motor Co., Inc., 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012).  The sale of a product does not breach the implied warranty of merchantability when it "is in safe condition and substantially free of defects."  Mexia v. Rinker Boat Co., Inc., 174 Cal. App. 4th 1297, 1303 (2009).

Here, plaintiffs' Song-Beverly Act claim asserts that L'Oreal's omission of a flammability warning rendered Serum unsafe for its ordinary purpose as a leave-in hair product.  This claim hinges on determining whether the product is flammable and whether a reasonable consumer would expect a flammable leave-in hair product to contain a warning.  These issues can be resolved through common proof about the nature of Serum and the expectations of a reasonable consumer, and therefore the Court finds that common issues predominate.

Accordingly, for the reasons set forth above, common issues predominate over individualized issues with regard to liability for all of plaintiffs' claims.

b.    Damages

L'Oreal argues that even if common questions predominate concerning whether it has violated each of the laws discussed above, the Court should nonetheless deny certification for the California class because there is no classwide method of determining what monetary relief should be awarded.[3]  Calculating damages or restitution, L'Oreal

---

[3] Under the New York consumer protection statutes, each injured consumer may recover $50 upon proof of injury.  N.Y. GBL § 349(h).  L'Oreal does not contest that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

argues, will require an inquiry into whether each individual class member would have purchased Serum if it had been labeled as flammable, and if so, how much he or she would have been willing to pay for it. L'Oreal concludes that individual issues will therefore predominate with respect to the damages inquiry.

In response, plaintiffs explain that they will generate common proof of damages by determining, through expert testimony, the actual market value of the Serum purchased by the class ("true market price"). Tersigni Decl. ¶ 12. This testimony will determine the market value of Serum given that it was flammable but not labeled as such. According to plaintiffs, this evidence will show that Serum's true market price is either $0 or a figure substantially lower than $6. Id. Once the true market price has been computed, plaintiffs contend that each class member can be awarded, for each bottle of Serum purchased, the difference between Serum's historical market price and its true market price. Since this inquiry depends only on facts about the market price of Serum, not on the behavior of each class member, plaintiffs contend that individual issues will not predominate.

In light of California law regarding relief that can be awarded for violations of the Song-Beverly Act and the consumer protection statutes at issue in this case, the Court finds that plaintiffs have articulated a legally justifiable theory of relief that does not depend on individualized inquiries. Under the UCL, FAL, and CLRA, a court may grant a class restitution as a form of relief. Colgan, 135 Cal. App. 4th at 694 ("There is nothing to suggest that the restitution remedy provided under the CLRA should be treated differently than the restitution remedies provided under the False Advertising or Unfair Competition Laws."); Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780. The form of restitutionary relief authorized by California law has two purposes: returning money unjustly taken from the class, and deterring the defendant from engaging in future violations of the law. Colgan, 135 Cal. App. 4th at 695. Restitutionary relief is an equitable remedy, and its purpose is   is "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003); Cortez v. Purolator Air Filtration

common issues predominate regarding proof of damages under New York law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Products Co., 23 Cal. 4th 163, 177 (2000) ("The object of the restitution order in each case was money that once had been in the possession of the person to whom it was to be restored.").

In granting restitution, "[a] court of equity may exercise its full range of powers in order to accomplish complete justice between the parties." Colgan, 135 Cal. App. 4th 698. Nonetheless, the restitution awarded must be a "quantifiable sum," and the award must be supported by substantial evidence. Id. at 700; Cortez, 23 Cal. 4th at 178. Thus, the restitution awarded to class members must correspond to a measurable amount representing the money that the defendant has acquired from each class member by virtue of its unlawful conduct. Colgan 135 Cal. App. 4th at 697 – 698. The magnitude of this relief must be measured in light of the purpose of restitutionary relief, which is restoring the *status quo ante* by giving back to the class members what was taken from them through violations of the law. Id. Unlawful profits unfairly obtained can provide a measure for recovery, but only "to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." Korea Supply, 29 Cal. 4th at 1148.

One method of quantifying the amount of restitution to be awarded is computing the effect of unlawful conduct on the market price of a product purchased by the class. Colgan, 135 Cal. App. 4th at 698 – 699 ("Where a person is entitled to a money judgment against another because by fraud, duress or other consciously tortious conduct the other has acquired, retained or disposed of his property, the measure of recovery for the benefit received by the other is the value of the property at the time of its improper acquisition, retention or disposition . . .") (quoting The Restatement of Restitution § 151). This measure of restitution contemplates the production of evidence that attaches a dollar value to the "consumer impact or advantage" caused by the unlawful business practices. Id. at 700. Restitution can then be calculated by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful business practices. Expert testimony may be necessary to determine the amount of price inflation attributable to the challenged practice. Id.

In light of these principles, the Court concludes that there is a classwide method of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

determining relief under the California consumer protection statutes. Awarding each class member the difference between the historical market price and the true market price would restore the *status quo ante* by returning to the class the extra amounts they were forced to pay due to the lack of a flammability disclosure. Additionally, while California law suggests that the market impact of the unlawful conduct should be established by expert testimony, <u>Colgan</u>, 135 Cal. App. 4th at 699 – 700, this is plaintiffs' proposed method of proof.

Plaintiffs' method of proof can also be applied to compute relief owed to the class for the alleged breach of the implied warranty of merchantability. "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Cal. Com. Code § 2714(2). In other words, the damages a plaintiff can recover for a breach of the warranty of merchantability are "the monetary equivalent of the benefit of his bargain." <u>S.M. Wilson & Co. v. Smith Intern, Inc.</u>, 587 F.2d 1363, 1375 (9th Cir. 1978). Here, plaintiffs' proposed damages analysis will be based on the benefit of the bargain. The true market value of the Serum in plaintiffs' damages computation method measures the value of what the class actually received. Moreover, the historical market value measures the value of a bottle of Serum in merchantable condition. The differences between these two figures therefore corresponds to the benefit of the bargain, and consequently, provides a measure of classwide relief for all of the California claims.

L'Oreal argues that even if plaintiffs' proposed method of computing damages is allowed by California law, the Court should nonetheless deny certification because plaintiffs have not yet produced expert testimony showing that the true market price of Serum was lower than the historical market price. L'Oreal contends that plaintiffs are required to produce this evidence prior to certification, because without this evidence, plaintiffs cannot demonstrate a connection between their theories of liability and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

damages.  <u>Comcast v. Behrend</u>, 133 S.Ct. 1426 (2013).[4]

In <u>Comcast</u>, an antitrust action, the Supreme Court considered whether class certification was appropriate under Rule 23(b)(3) where the district court had accepted only one of the plaintiffs' four theories of antitrust injury, but the plaintiffs' method of computing damages did not differentiate between harm caused by the four forms of antitrust injury asserted by the plaintiffs.  <u>Id.</u> at 1433.  The lower courts believed that this computation of classwide damages was acceptable because there was no need for the plaintiffs "to tie each theory of antitrust impact to a calculation of damages."  <u>Id.</u>  The Supreme Court held that this reasoning was in error, because it ignored the principle that "[t]he first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*."  <u>Id.</u> at 1435 (emphasis in original).  The Court explained that "at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation."  <u>Id.</u> at 1433.  Finding the requisite connection lacking between the plaintiffs' evidence of classwide damages and the plaintiffs' theory of liability to the class, the Court found that Rule 23(b)(3) was not satisfied.

Under <u>Comcast</u>, courts can only certify a Rule 23(b)(3) class if there is evidence demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability.  <u>Forrand v. Federal Exp. Corp.</u>, 2013 WL 1793951, at *3 (C.D. Cal. 2013) ("As the Supreme Court reemphasized in <u>Comcast</u>, in order for Rule 23(b)(3)'s predominance requirement to be satisfied, a plaintiff must bring forth a measurement method that can be applied classwide *and* that ties the plaintiff's legal

---

[4] Additionally, at oral argument, counsel for L'Oreal argued that plaintiffs will not be able to show that the true market value of Serum was less than its historical market value because the pre-2007 bottles of Serum contained a flammability warning but still sold for $5.99.  The proper method for making a determination regarding the true market value of the unlabeled bottles of Serum purchased by the class is a factual question that is not fully resolved by this argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|----------|----------------------------------------------------------------|------|--------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

theory to the impact of the defendant's allegedly illegal conduct."); Roach v. T.L. Cannon Corp., 2013 WL 1316452 (N.D. N.Y. 2013) ("The failure of the proponent of the class to offer a damages model that was susceptible of measurement across the entire class for purposes of Rule 23(b)(3) was fatal to the certification question."). Otherwise, the plaintiffs have not met their burden of introducing evidence showing that common questions predominate regarding classwide relief. Comcast, 133 S.Ct. at 1432 ("The party must also satisfy through *evidentiary proof* at least one of the provisions of Rule 23(b).") (emphasis added).

Here, because plaintiffs have not submitted expert testimony actually demonstrating a gap between the true market price of Serum and its historical market price, they have not met their burden of demonstrating that common questions predominate over individual issues regarding classwide relief. A classwide method of awarding relief exists in this case if, in fact, the false advertising at issue had a measurable impact on the market price of Serum. If it did, then common questions regarding classwide relief predominate, because the critical inquiry is attaching a dollar value to the impact of the false advertising. See In re Diamond Foods, Inc. Securities Litigation, — F.R.D. —, 2013 WL 1891382, at *11 (N.D. Cal. 2013) (expert evidence satisfies plaintiff's burden under Rule 23(b)(3) by demonstrating market impact, even if it does not calculate damages). If, however, the false advertising had no such quantifiable impact on Serum's market price, then certification is not appropriate, because plaintiffs have offered no other method of awarding relief based on proof common to the class. Therefore, evidence of impact on the consumer market is needed to satisfy plaintiffs' burden of demonstrating the predominance of common questions. Although this evidence is also critical to the merits of plaintiffs' claims, the class certification inquiry will often involve "considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Dukes, 131 S.Ct. at 2552 (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982)).[5]

---

[5] In some cases, such as wage and hour class actions, the plaintiffs' theory of liability is such that awarding damages to the class is "a purely mechanical process," and therefore expert testimony or other affirmative proof may not be needed to demonstrate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|----------|----------------------------------------------------------------|------|--------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

Consequently, without evidence affirmatively demonstrating that the true market price of Serum can be calculated on a classwide basis, plaintiffs' claim that there is a classwide method of granting relief is factually unsupported. This lack of evidence compels the conclusion that certification for the California class is not appropriate at present because the requirement of predominance is not satisfied. The denial of class certification is without prejudice, however, because the Court cannot make a final determination on the present record regarding whether predominance can be satisfied. Accordingly, plaintiffs may make a renewed motion for class certification after presenting expert testimony demonstrating that common questions predominate regarding classwide relief.

However, plaintiffs' lack of expert testimony computing restitutionary relief does not undermine a finding of predominance regarding the New York class. Under N.Y. G.B.L § 349(h), a plaintiff can recover statutory damages in the amount of $50 upon a finding that the plaintiff has suffered injury. Plaintiffs have elected to pursue these statutory damages on behalf of the New York class in lieu of actual damages. Tersigni Decl. ¶ 12. Therefore, no expert testimony demonstrating the existence of a measurable impact on Serum's market price is necessary to award relief to the New York class. Moreover, because awarding classwide relief only requires that a fixed amount of statutory damages be granted to each class member, no individualized damages inquiries are necessary for the New York class. These considerations show that the predominance requirement is satisfied for the New York class.

The Court acknowledges that, under New York procedural rules, a class action to

---

the predominance of common issues. See Parra v. Bashas', Inc., — F.R.D. —, 2013 WL 2407204, at * 31 – 32 (certifying Rule 23(b)(3) class without expert testimony); Leyva v. Medline Industries Inc., 2013 WL 2306567, at *3 (9th Cir. 2013). Here, however, awarding relief to the California class is not comparably straightforward because, as plaintiffs' admit, expert testimony is likely required to compute the true market price of Serum. A finding of liability by itself therefore does not give rise to a mechanical method of awarding classwide relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|----------|------------------------------------------------------------------|------|--------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

recover statutory damages under section 349(h) cannot be maintained. <u>See</u> N.Y. C.P.L.R. § 901(b) ("Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."); <u>Burns v. Volkswagen of America</u>, N.Y.S. 2d 410, 413 ("Pursuant to CPLR 901, class actions cannot be maintained under [GBL § 349(h)] . . . for recovery of minimum or punitive damages because those sections do not contain specific authorizing language."). These rules do not apply to a class action proceeding in federal court, however, despite the risk of forum shopping this divergence in state and federal law creates. <u>Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.</u>, 130 S.Ct. 1431, 1448 (2010) (holding that CPLR § 901(b) does not apply to class actions in federal court, despite the "the reality that keeping the federal-court door open to class actions that cannot proceed in state court will produce forum shopping."); <u>Bristol Village, Inc. V. Louisiana-Pacific Corp.</u>, — F. Supp. 2d —, 2013 WL 55698, at * 11 n.5 (W.D. N.Y. 2013) ("Although N.Y. C.P.L.R. 901(b) prohibits class action relief for a statutorily-imposed penalties or minimum damages, the Supreme Court held in [<u>Shady Grove</u>] that the certification requirements of Rule 23 preempted this state law 'procedural' limitation in federal actions."). Therefore, although allowing the New York class to pursue statutory damages appears to contravene New York procedural law, this outcome is required under <u>Shady Grove</u>.[6]

---

[6] At oral argument, counsel for L'Oreal argued that <u>Hooper v. HM Mane Solutions, LLC</u>, 819 N.Y.S.2d 848 (N.Y. Sup. Ct. 2006) (unreported disposition), foreclosed plaintiffs' claims for statutory damages under the GBL. L'Oreal is incorrect. First, since <u>Hooper</u> is a New York state court case decided prior to <u>Shady Grove</u>, it does not address whether statutory damages under GBL § 349(h) are recoverable in a class action brought in federal court. Second, in <u>Hooper</u>, the court declined to certify a class of consumers who brought suit against the maker of "Easy Straight Hair Straightening System" because the hair product allegedly caused damage to plaintiffs' hair or scalp, but failed to warn them of this possibility. <u>Id.</u> at *1. In denying plaintiffs' motion to certify, the court observed that the proposed class "is based on the plaintiffs' argument that the mere purchase or use of Easy Straight is actionable even without any injury." <u>Id.</u> at *2. Here,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

      2.    Superiority

     Rule 23(b)(3) sets forth four relevant factors for determining whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These factors include:

    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D) the likely difficulties in managing a class action.

Id.

     "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotation marks and citation omitted), amended by 273 F.3d 1266 (9th Cir. 2001).

     The Court finds that class litigation is superior to other methods of adjudication in this case. First, class actions "to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'" Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 600 (E.D. Cal. 1999) (quoting Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607,

in contrast to the physical injuries alleged in Hooper, plaintiffs allege that they suffered economic injury. Accordingly, Hooper is distinguishable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|----------|------------------------------------------------------------------|------|--------------|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

610 (D. Ariz. 1982)).  Second, given that Serum sells for less than $10.00 per bottle, "there is no realistic alternative to a class action in this case, making a class action understandably the superior method of adjudication."  Dannon, 255 F.R.D. at 672. Finally, adjudicating class claims will be significantly less burdensome than if the matter were prosecuted individually.  Menagerie Prods. v. Citysearch, 2009 WL 3770668, at *19 (C.D. Cal. Nov. 9, 2009) (concluding that "it does not appear that any members of the class have commenced any other litigation concerning the controversy alleged herein" and "concentrating the litigation in this Court will allow it to proceed in an efficient manner without risking inconsistent outcomes, and there is no reason to think that this is an undesirable forum to litigate these claims").

Accordingly, the Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.

### C.     Whether the Class is Ascertainable

Finally, L'Oreal argues that even if the requirements of Rule 23 are met for the New York class and could be met for the California class, certification is not appropriate because the classes are not ascertainable.  "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists."  Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009); O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 331, 319 (C.D. Cal. 1998) ("A class definition should be precise, objective, and presently ascertainable."). An ascertainable class exists if it can be identified through reference to objective criteria, and subjective standards such as a class member's state of mind should not be used when defining the class.  Manual for Complex Litigation (Fourth) § 21.222.

Some courts have found that a class is not ascertainable when it is defined too broadly and contains class members who could not pursue legal claims akin to those asserted by the representative plaintiffs.  Diacakis v. Comcast Corp., 2013 WL 1878921, at *4 (N.D. Cal. 2013); Oshana v. Coca-Cola Co., 472 F.3d 506, 513 – 514 (7th Cir. 2006).  In Oshana, for example, the plaintiffs alleged a false advertising claim, based on allegations that Diet Coke advertisements claimed the soda was sweetened only with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

aspartame, even though fountain Diet Coke was sweetened with both aspartame and saccharin. The plaintiffs sought to represent a class of individuals who purchased fountain Diet Coke. The Seventh Circuit held that this class was not ascertainable, because it could include individuals who knew fountain Diet Coke contained saccharin and perhaps even purchased it for those reasons. Id. at 513 – 514. Similarly, in Diacakis—which was also a consumer deception case—the district court found that a class composed of all individuals who had purchased a bundled entertainment package was not ascertainable because the class could include individuals who were not deceived by the alleged failure to disclose certain hidden charges. Diacakis, 2013 WL 1878921, at *4. The Court in Diacakis reasoned that some class members could have learned of those charges, and hence would not have had claims similar to those held by the representative plaintiffs. Id.

L'Oreal argues that here, just as in Diacakis, the class is defined too broadly because it could contain individuals who do not care whether the product is flammable. As an initial matter, this argument does not appear to truly concern whether the class is ascertainable. The requirement of an ascertainable class is met as long as the class can be defined through objective criteria. Here, because the requirement for membership in the class is whether a consumer purchased a particular product after a particular date, the class is easily identifiable. The question L'Oreal raises is whether all class members have similar claims and whether the class members have claims similar to those of the class representatives, and this question is analyzed under the rubric of Rule 23, not the requirement of an ascertainable class.

Additionally, regardless of whether L'Oreal's arguments actually address the requirement of an ascertainable class, the cases L'Oreal relies on are readily distinguishable. Unlike Oshana and Diacakis, here there is no suggestion that class members knew Serum was flammable, and there is no evidence that consumers do not care about the flammability of the product. Additionally, under California law, "[n]ondisclosures about safety considerations of consumer products are material," which suggests that a broad class definition is appropriate in cases involving omissions about consumer safety. In re Toyota Motor Corp., 754 F. Supp. 2d 1145, 1173 (C.D. Cal. 2010). Finally, as discussed above, there are common methods of demonstrating liability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

under both California and New York law, and therefore the classes are not overly broad. The Court therefore concludes that the class is ascertainable, and rejects L'Oreal's arguments to the contrary.

### D.    Appointment of Class Counsel

Rule 23(g)(1) requires the Court to appoint class counsel.  Rule 23(g) provides, <u>inter alia</u>, that courts must consider the following factors in appointing class counsel:

(i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)

The Court is satisfied that plaintiffs' co-counsel of record, KamberLaw, LLP and Parisi & Havens LLP meet the criteria of Rule 23(g) and may serve as co-class counsel. First, both firms have represented plaintiffs throughout this litigation.  Second, both firms have significant experience in litigating class actions and otherwise satisfy the requirements of Rule 23(g).  <u>See</u> Tersigni Decl. ¶¶ 16 – 19.  Finally, both firms have sufficient resources to vigorously represent the classes.  <u>See</u> <u>id.</u>, ¶¶ 17, 19.

KamberLaw, LLP and Parisi & Havens LLP are hereby appointed class counsel pursuant to Rule 23(g).

## V.    CONCLUSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV CV 11-1067 CAS (JCx); Consolidated with CV 11-5465 CAS (JCx) | Date | July 1, 2013 |
|---|---|---|---|
| Title | JILL GUIDO, ET AL. V. L'OREAL, USA, INC., ET AL; Consolidated with CATHERINE ALTAMURA, ET AL. V. L'OREAL, USA, INC., ET AL. | | |

In accordance with the foregoing, plaintiffs' motion for class certification is GRANTED in part and DENIED WITHOUT PREJUDICE in part. The following class is hereby certified:

New York Class: All individuals who purchased Garnier Fructis Sleek & Shine Anti-Frizz Serum in the state of New York at any time during the period of February 4, 2008 to the present.

Exclusions: Excluded from both classes are defendants as well as all employees of the Court, including, but not limited to, judges, magistrate judges, clerks, and court staff and personnel of the United States District Courts of the Central District of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court; their spouses or significant others and any minor children living in their households and any other persons within a third degree of relationship to any such federal judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit. Also excluded from the classes are any attorneys or other or other employees of any law firms hired, retained, and/or appointed by or on behalf of the named plaintiffs to represent the named plaintiffs and any/or proposed class members or proposed class in this lawsuit. Also excluded from the classes are (1) any persons who have sustained physical injury or physical damage that relates to or arose from their use of Garnier Anti-Frizz Sleek & Shine Serum and (2) any persons who purchased Garnier Anti- Frizz Sleek & Shine Serum for resale or distribution.

As stated above, plaintiffs may make a renewed motion to certify the California class upon submission of expert testimony supporting their proposed method of awarding relief on a classwide basis.

IT IS SO ORDERED.

| | 00 | : | 25 |
|---|---|---|---|
| Initials of Preparer | MS | | |